TENNESSEE ENAMEL MFG Co. *v.* HAKE, Commissioner.

*(Nashville,* December Term, 1945.)

Opinion filed May 4, 1946.

ARMISTEAD, WALLER, DAVIS & LANSDEN, of Nashville, for appellant, complainant below.

HAMMOND FOWLER, of Rockwood, and W. L. MOORE, of Nashville, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The complainant, Tennessee Enamel Manufacturing Company, filed its bill in the Chancery Court of Davidson County assailing the constitutionality of that portion of the Unemployment Compensation Act as codified in Section 6901.5, subsection (3), of Williams' Code (Section 8, subsection (d) (3), Chapter 131, Public Acts 1939), which provides, in substance, that an employee who is out of work for a period of four weeks by reason of a labor dispute shall be entitled to the benefits of the act beginning with the sixth week, one week being a waiting period.

The bill set out that complainant is a Tennessee corporation engaged in the enamel business and the manufacture of stoves.

The bill further set forth that at the time of its filing on February 20, 1946, complainant had in its employ about 400 employees who were on strike which began on January 14, 1946; that these employees had left their jobs by reason of a labor dispute but that the strike was not brought about by complainant; that complainant had been contributing to the state unemployment compensation fund since its enactment in 1936, and was paying, in compliance with the act, 2.4 per cent of the average yearly wages of its employees.

The bill charged that the maximum amount which complainant could be required to pay under the act was 3.3 per cent of the average yearly wages of its employees, and that it was accordingly to the interest of complainant to maintain the best record possible, since the percentage of wages it had to pay to the fund was dependent upon its experience; that at all times complainant was anxious for its employees to work and their jobs were at all times available but that the employees refused to return to work, and as a result complainant had not been able to operate.

The bill further charged that the defendant is the commissioner of the employment security of the State and has charge of the administration of the Unemployment Compensation Act; that a majority of the employees who went out on strike were still on strike and refused to return to work and had made application to the defendant for unemployment compensation payments; and that defendant had informed complainant that he had no discretion in the matter as to whether or not these payments should be made, for the act was mandatory and those employees who were on strike would be paid as soon as their applications could be processed by him.

The bill further charged that the aforesaid section of the act was unconstitutional in that it violated Article 1, section 8, of the State Constitution, in that payments to the employees under said act would amount to the taking of property without due process of law and a confiscation of complainant's property.

The bill also set out that many of the employees were not seeking other employment, were idle, had made no effort to get employment, and were daily on the picket line about complainant's plant, and that if the employees were paid it would amount to complainant paying them

while they were idle and away from their jobs, which were at all times available for them.

The bill prayed for an injunction. The chancellor issued a stay order.

The defendant filed a motion to dismiss the cause on two grounds: (1) That complainant had an adequate remedy at law under the administrative provisions of the act; and (2) that the bill did not show it was absolutely certain that complainant would suffer any wrong, as it was not shown that any of the persons concerned in the strike would be entitled to compensation payments.

After a hearing, the chancellor dismissed the bill on March 6, 1946. The complainant moved for an order preserving the *status quo* of the cause pending the appeal and the final decree of this Court but that application was denied, and this appeal resulted.

By section 6901.6 of Williams' Code (section 6 of the Act, Pub. Acts 1936, Ex. Sess. ch. 1) it is provided that when a claim is filed which involves the question of a labor dispute, a deputy in the commissioner's office shall make a findings of fact with respect to the labor dispute and send it to the commissioner, who shall affirm, modify, or set aside such findings of fact by the deputy, and that the parties have the right to appeal such findings of fact to the appeal tribunals. This section further provides for an appeal to the board of review from any decision of an appeal tribunal, and also provides for judicial review by filing a petition for *certiorari* in the chancery court.

. Complainant contends that it would be an idle ceremony for it to follow the procedure outlined in section 6 because the administrative officers would not admit that the section of the act under attack is unconstitutional. However, the act provides a remedy for the complainant (and this portion of the act is not under attack), in which

it can make whatever legal defense it sees fit, and finally for the courts to pass upon said defense.

The complainant further contends that the defendant stated that he had no discretion in the allowance of claims but would have to put the applications in the proper channels for payment, and the payments would be made by him as soon as they were processed.

Section 6901.4 of Williams' Code (section 4 of the Act) requires the commissioner to make certain findings with respect to claimants' eligibility to benefits and in so doing the commissioner must exercise his own discretion in passing on the claims. This Court cannot assume that the defendant would fail to carry out the duties required of him by the act.

The complainant contends that it is entitled to injunctive relief to prevent a multiplicity of suits. The act provides that the manner in which disputed claims shall be presented shall be in accordance with the regulations of the board of review, and it is reasonable to assume that the board of review would be as much interested as the complainant in preventing a multiplicity of suits and in permitting complainant to present its defense that the act violated the constitution, in one proceeding.

The act in question requires complainant to resort to the remedies set forth therein as a condition precedent to having a court of review. The plainer sections of the Unemployment Act were construed by this Court in *Block Coal, etc., Co.* v. *United Mine Workers,* 177 Tenn. 247, 148 S. W. (2d) 364, and *Queener* v. *Magnet Mills, Inc.,* 179 Tenn. 416, 167 S. W. (2d) 1. In each of those cases the Court looked to the declared intention of the act as set forth in Section 2 in aid of the construction placed thereon. Also, see *State ex rel.* v. *American Trust Co.,* 161 Tenn. 570, 32 S. W. (2d) 1036; *Kutsche & Co.* v. *Keith,*

169 Tenn. 399, 88 S. W. (2d) 454; and *Porter* v. *Investors' Syndicate,* 286 U. S. 461, 52 S. Ct. 617, 76 L. Ed. 1226.

In 42 Am. Jur., Public Administrative Law, Section 197, it is said:

"The doctrine of exhaustion of administrative remedies requires that where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act."

It is also well settled that where there is a full and adequate remedy at law for an injury, it is not irreparable. *Fort* v. *Dixie Oil Co.,* 170 Tenn. 464, 95 S. W. (2d) 931.

Section 6901.6 of Williams' Code (section 6(b) of the Act) also provides that if the allowance of claims is finally reversed, "no employer's account shall be charged with benefits so paid."

We are, therefore, of opinion that the suit was prematurely brought. Furthermore, it appears that the bill makes no attack on the act levying the tax, but only complains of the disposition of the funds derived from the tax levy after it comes into the hands of the commissioner. As it is uncertain whether complainant's tax rate will be increased, that being dependent upon a contingency which may or may not happen in the future, it is not adversely affected. *Texas Co.* v. *Bryant, Com'r,* 178 Tenn. 1, 152 S. W. (2d) 627.

In *Lawrence Baking Co.* v. *Michigan Unemployment C. Comm.,* 308 Mich. 198, 214, 13 N. W. (2d) 260, 265, 266, 154 A. L. R. 660, the Supreme Court of Michigan was considering the constitutionality of a statute containing a provision similar to the one under consideration here and said:

"Plaintiff's argument is based upon the premise that the payment of compensation to employees on strike is a

penalty upon the employer because its rate of contribution to the unemployment fund will thereby be increased. The public purpose of the unemployment compensation law is to alleviate the distress of unemployment, and the payment of benefits is not conditioned upon the merits of the labor dispute causing unemployment. Likewise, the required contribution of the employer to the unemployment compensation fund is not determined upon the basis of the merits of the dispute. The increase in the amount of the employer's contribution to the fund because of its experience record of payments to employees is not in any sense a penalty. By the unemployment compensation act, the legislature provided a method of determining the employer's contribution to the compensation fund, and it did not see fit to base the amount of such contribution upon the merits of a labor dispute or upon the right or wrongdoing of the employer in connection with such dispute. Such legislative enactment is presumed to be constitutional unless the contrary clearly appears. In the case of *Cady* v. *City of Detroit*, 289 Mich. 499, 505, 286 N. W. 805, 807, we said:

" 'A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. . . . Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution, that a court will refuse to sustain its validity.' "

It results that all the assignments of error are overruled and the decree of the chancellor is affirmed.