IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 8, 2011 Session

## READY MIX, USA, LLC., v. JEFFERSON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Jefferson County**
**No. 99-113      Hon. Jon Kerry Blackwood, Senior Judge**

**No. E2010-00547-COA-R3-CV-FILED-JUNE 9, 2011**

Defendant issued a stop work order against plaintiff to cease mining activities on plaintiff's property.  Plaintiff brought suit in Chancery Court seeking a declaratory judgment on the issue.  A bench trial was held and the Trial Court adopted the doctrine of diminishing assets[1] and that Ready Mix had established a pre-existing and non-conforming use on its property pursuant to Tenn. Code Ann. § 13-7-208 (b)(1).  Defendant has appealed and we hold on this record that plaintiff was required to exhaust its administrative remedies prior to filing an action in Chancery Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Case Dismissed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, J., joined, and CHARLES D. SUSANO, JR., J., dissented and filed an opinion.

S. Douglas Drinnon and Larry Ray Churchwell, Dandridge,  Tennessee, for the appellant, Jefferson County, Tennessee.

Arthur G. Seymour, Jr., and Benjamin C. Mullins, Knoxville, Tennessee, for the appellee, Ready Mix, USA, LLC.

---

[1]Generally the doctrine of diminishing assets recognizes that a mining operation is unique and the holding of property in reserve is a normal part of mining operations and will not be impaired by a subsequent zoning change on the property.

## OPINION

### Background

This case arises from a zoning controversy between plaintiff/appellee Ready Mix, USA, LLC (Ready Mix) and defendant/appellant Jefferson County, Tennessee (Jefferson County). Ready Mix is the successor company of the original plaintiff American Limestone Company, Inc. (American Limestone). American Limestone, in turn, was a subsidiary of ASARCO, also a prior owner of the property. Since the original filing of this action in 1999, there have been numerous corporate acquisitions of American Limestone, culminating in its absorption into Ready Mix. The subject property is located in Jefferson County, Tennessee and is referenced herein as the "Grasselli property" or "the property".

On August 17, 1998 Jefferson County adopted a zoning ordinance and zoning map that classified the Grasselli property as A-1 agricultural forestry. American Limestone claims that it continued in the use of the property until November 30, 1998, when it received a stop work order from a Jefferson County zoning official. Another stop work order was issued by the County Zoning Office to American Limestone on December 9, 1998.[2]

American Limestone requested a hearing before the Board of Zoning Appeals to appeal the stop work order and a hearing was scheduled to take place on August 9, 1999. The hearing did not take place in August as American Limestone requested that the hearing be postponed until October 11, 1999. However, on August 2, 1999, American Limestone filed a Complaint for Declaratory Judgment against Jefferson County in the Chancery Court of Jefferson County, Tennessee. The Complaint sought a declaration that American Limestone had a vested right to operate a rock quarry on the Grasselli property and that plaintiff had established a pre-existing non-conforming use of mining and quarrying on the property pursuant to Tenn. Code Ann. § 13 -7-208 and Article 6.2 of the Jefferson County Zoning Resolution. Plaintiff asked that the stop work order be lifted and the County enjoined from enforcing that order. The suit did not challenge the validity of the zoning ordinance or any state statute, and there is no explanation in the record as to why the matter was not considered by the Board of Zoning Appeals.

Jefferson County answered on September 21, 1999 and demanded a jury. The County asserted affirmative defenses: that plaintiff had failed to exhaust administrative remedies; that plaintiff's use of the Grasselli property was illegal; and that plaintiff had not established a pre-existing non-conforming use of the property for mining purposes.

---

[2] The December 9, 1998 stop work order was issued on behalf of the Jefferson County Zoning Office by its attorney.

Defendant filed a motion for summary judgment on March 20, 2000 and American Limestone filed a response to the motion on June 31, 2001. Almost eight years later, the motion was heard on March 23, 2009 by the Honorable Jon Kerry Blackwood, Senior Judge, sitting by designation. The trial court denied the motion by its order of March 27, 2009.[3]

A bench trial was held on January 19 and 20, 2010, and a Final Judgment was entered on March 3, 2010 where the Trial Court adopted the doctrine of diminishing assets and that Ready Mix had established a pre-existing and nonconforming use of the Grasselli property pursuant to Tenn. Code Ann. § 13-7-208(b)(1). The Court further held that plaintiff was not required to file an administrative appeal prior to filing suit in Chancery Court.

The County filed an appeal to this Court and raised the following issues:

A.     Did the Trial Court err when it denied appellant a jury trial?

B.     Did the Trial Court err when it held that appellee was not required to exhaust administrative remedies prior to filing this action in the Chancery Court?

C.     Did the Trial Court allow appellee's expert witness to express legal conclusions?

D.     Did the Trial Court err when it adopted the diminishing assets doctrine?

E.     Did the Trial Court err in finding that appellee had established a nonconforming use on the property prior to the enactment of the county zoning ordinance?

F.     Did appellee establish a vested right in the use of the property as a quarry?

G.     Did the Trial Court err in not applying the "pending ordinance doctrine"?

---

[3]The Chancellor recused himself on October 27, 1999, and in his Order referred to the Presiding Judge of the district to assign another Judge to the case. The Presiding Judge assigned a Chancellor from another district to hear the case but, for whatever reason, the summary judgment was not acted upon at the time. On May 15, 2008, the Chancellor who had recused himself entered the following Order which states in part: "The last activity in the court file was January 24, 2002. Pursuant to the provisions of Tennessee Code Annotated 17-2-201, IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the above-captioned matter be referred to the Administrative Office of the Courts for assignment of a special judge for hearing by the chief Justice of the State of Tennessee", which resulted in the appointment of Judge Blackwood. Accordingly, the case languished in the Court for six years without either party seemingly having any interest in completing the matter.

We review the trial court's findings of fact *de novo* with the presumption that the trial court's factual determinations are correct unless the evidence preponderates against such factual determinations. Tenn. R. App. P. 13 (d). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)*; Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993).

Defendant/appellant Jefferson County appeals the Trial Court's order striking its jury demand. This issue should not have been raised on appeal as the Trial Court's order striking the County's jury demand clearly and unequivocally states that following a hearing on plaintiff's motion to strike defendant's jury demand "[t]he parties so notified the court that a jury was not necessary under the circumstances." There is nothing in this record that shows that the County disputed the Court's statement in the order that the parties had agreed that a jury was not necessary. As such, the County waived its right to a jury trial and to raise this issue on appeal is disingenuous at best.

Next, defendant/appellant contends the Trial court erred when it refused to dismiss plaintiff's claims brought under Tenn. Code Ann. § 13-7-208 because plaintiff failed to exhaust its administrative remedies after the County Zoning Office issued a stop work order. This issue is a challenge to the Trial Court's subject matter jurisdiction, and the determination of whether subject matter jurisdiction exists is a question of law, to be reviewed *de novo*, without a presumption of correctness. *Cheatham County ex rel. Armstrong v. Kong*, M2008-01914-COA-R3-CV, 2009 WL 1910952 at * 3 (Tenn. Ct. App. June 30, 2009)(citing *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn.2000).

The Complaint for Declaratory Judgment sought a declaration that plaintiff had a vested right to operate a rock quarry on the Grasselli property and that plaintiff had established a pre-existing non-conforming use of mining and quarrying on the property pursuant to Tenn. Code Ann. § 13 -7-208 and Article 6.2 of the Jefferson County Zoning Resolution. Plaintiff specifically based the Complaint on Tenn. Code Ann. § 13-7-208 (b)(1) that provides:

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no

change in the use of the land is undertaken by such industry or business.

Tenn. Code Ann. § 13-7-208 (b)(1) is often referred to as the "grandfather statute" or "grandfather clause", which was defined by the Supreme Court in *Smith County Reg'l Planning Comm'n v. Hiwassee Vill. Mobile Home Park, LLC*, 304 S.W.3d 302, 310 (Tenn. 2010) as "an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction." *Id*. (citing Black's *Law Dictionary* 629 (5th ed.1979). The purpose of the grandfather clause was explained in *Smith* as follows: Because property is usually already in use when it is first zoned it is inevitable that the zoning provisions will clash with the existing use of particular pieces of property. The grandfather clause "avoids the legal problems that would attend a local government's efforts to force a private property owner to discontinue an otherwise permissible use of property. *Smith* at 310 (citing *Custom Land Dev., Inc. v. Town of Coopertown,* 168 S.W.3d 764, 772 n. 4 (Tenn. Ct. App.2004)(quoting *Lafferty v. City of Winchester,* 46 S.W.3d 752, 758 (Tenn. Ct. App.2000)).

Ready Mix claims that the use of the Grasselli property as a quarry was a nonconforming use allowed prior to a enactment of the Jefferson County zoning ordinance, and, therefore, it is entitled to protection under Tenn. Code Ann. § 13-7-208, the grandfather statute. Plaintiff asked that the stop work order be lifted and the County be enjoined from enforcing the order. The suit did not challenge the validity of the zoning ordinance. The County contends that Ready Mix was required to file an appeal with the Jefferson County Board of Zoning Appeals before it could seek relief in the Chancery Court.

Counties obtain their power to enact zoning ordinances and otherwise regulate the use of land by delegation from the state. *Smith* at 309 - 310 (citing *Edwards v. Allen,* 216 S.W.3d 278, 284 (Tenn.2007); *Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 471 (Tenn.2004)). Tennessee Code Annotated section 13–7–101(a)(1) ) empowers county legislative bodies to regulate the uses of land. *Smith* at 310 (citing *Edwards,* 216 S.W.3d at 284). The state delegates the zoning power to local legislative bodies because that power "is viewed as essentially a legislative exercise of the government's police power." *Smith* at 310 (citing *Family Golf of Nashville, Inc. v. Metro. Gov't,* 964 S.W.2d 254, 258 (Tenn. Ct. App.1997)).

Tenn. Code Ann. § 13-7-106 and § 13-7-107 set forth the jurisdiction and powers of a board of zoning appeals: § 13–7–106 (a) provides that 'the legislative body of any county which enacts zoning regulations under the authority of this part shall create a county board of zoning appeals of three (3) or five (5) members."

Tenn. Code Ann. § 13-7-108 states that an appeal to the board of appeals " may be

taken by any person aggrieved, or by any officer, department or board of the county affected, by any grant or withholding of a building permit or by any other decision of a building commissioner or other administrative official, based in whole or in part upon the provisions of any ordinance under this part." Tenn. Code Ann. § 13-7-109 provides the powers a board of zoning appeals has including to " [h]ear and decide appeals where it is alleged by the appellant that there is error in any order, requirement, decision or refusal made by the county building commissioner or any other administrative official in the carrying out or enforcement of any ordinance enacted pursuant to this part."

Both state law and the Jefferson County Zoning Resolution provide the Board of Zoning Appeals with the authority to review the zoning officer's stop work order issued to plaintiff. The issue thus before this Court is whether it is mandatory that an aggrieved landowner, such as Ready Mix, is required to appeal to the County Board of Zoning Appeals prior to filing a suit in Chancery Court.

When a court considers whether the doctrine of exhaustion of administrative remedies is applicable, an initial determination of whether a statute provides an administrative remedy must be made. If a statute explicitly provides an administrative remedy, a party must exhaust this remedy prior to seeking relief from the courts. *B.F. Nashville, Inc. v. City of Franklin,* No. M2003-00180-COA-R3-CV, 2005 WL 127082 at * 5 (Tenn. Ct. App. Jan. 21, 2005) *(*citing *Thomas v. State Bd. of Equalization,* 940 S.W.2d 563, 566 (Tenn.1997); *Bracey v. Woods,* 571 S.W.2d 828, 829 (Tenn. 1978); *Tennessee Enamel Mfg. Co. v. Hake,* 183 Tenn. 615, 194 S.W.2d 468 (1946)). However, the courts have held that exhaustion is not statutorily required unless the statute "by its plain words" requires it. *Thomas,* 940 S.W.2d at 566; *Reeves v. Olsen,* 691 S.W.2d 527, 530 (Tenn.1985).

The Middle Section of this Court considered the issue before us in *State ex rel. Moore & Assocs. Inc. v. West,* 246 S.W.3d 569 (Tenn. Ct. App. 2005) *perm. app. denied.* In *Moore*, as here, the plaintiff/landowner contended that it was not required, under the doctrine of exhaustion of administrative remedies, to appeal to the Board of Zoning Appeals because the statute does not explicitly provide for an exclusive administrative remedy.[4] First, the *Moore* Court discussed the general rule set forth by the Tennessee Supreme Court in *Thomas,* that when a statute does not mandate an administrative remedy, the question of whether to require a party to exhaust available administrative remedies is a matter of judicial discretion. *Moore* at 577 (citing *Thomas* at 566; *Reeves* at 530). That discretion is not unlimited, however, and

---

[4] *Moore* concerned Tenn. Code Ann. § 13-7-207(1) which provides for the powers of a Municipal Board of Zoning Appeals while this case concerns Tenn. Code Ann. § 13-7-109 which provides for the powers of a County Board of Zoning Appeals. However, the two statutes contain the same language, thus the analysis in *Moore* is applicable here.

our Supreme Court has held that it must be exercised in conformance with certain principles including consideration of whether judicial review would prematurely interrupt the administrative process and what the purpose behind the doctrine of exhaustion of administrative remedies is. *Moore* at 577 - 578 (citing *Thomas* at 566; *Reeves* at 530). The Court in *Thomas* discussed the purpose of the doctrine of exhaustion of administrative remedies as follows:

> The exhaustion doctrine serves to prevent premature interference with agency processes, so that the agency may (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and (3) compile a record which is adequate for judicial review. In addition, an agency has an interest in discouraging frequent and deliberate flouting of the administrative process.

*Thomas* at 566.

The Court in *Moore* then proceeded to examine several zoning cases where the Supreme Court was called upon to exercise discretion regarding whether to require an exhaustion of administrative remedies. *See Moore* at 578 - 579. The Court discussed *Poteat v. Bowman,* 491 S.W.2d 77 (Tenn.1973), and the more recent case from the Tennessee Supreme Court, *Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466 (Tenn.2004). In *Cherokee Country Club, Inc.,* the Supreme Court applied the test to determine whether a party challenging a local zoning decision must exhaust administrative remedies by appealing to the Board of Zoning Appeals. The Court held that the issuance of a writ on mandamus was proper, even though the landowner had not appealed the denial of the demolition permit to the local Board of Zoning Appeals, because the landowner challenged the validity of an ordinance, not the official's discretion in denying the permit. *Id.* at 79. The *Moore* Court noted that Moore & Associates' challenge was to the zoning administrator's denial of the certificate, as it did not challenge the validity of the ordinance. *Moore* at 579. Similarly, Ready Mix did not seek a declaratory judgment from the Chancery Court regarding the constitutionality or validity of the Jefferson County Zoning Ordinance. Rather, Ready Mix's Complaint challenged the validity of the zoning official's interpretation of the ordinance, which did not consider the rights of Ready Mix under the grandfather statute.

After consideration of several Tennessee cases, the *Moore* Court concluded that plaintiff had failed to exhaust administrative remedies and dismissed the Complaint. The Court supplied the following rationale for its holding:

> While these and similar authorities implicitly recognize that exhaustion is not

-7-

statutorily required in this context, it is generally imposed in the zoning context as a matter of the exercise of judicial discretion. Absent unusual facts, such a result is compelled by the principles established in *Thomas,* the Supreme Court's holding in *Poteat,* and the well-settled authority regarding the courts' deference to the responsibility and authority of local zoning officials. It is clear that Moore & Associates was required to exhaust its administrative remedies by appealing the zoning administrator's decision to the Board of Zoning Appeals. The administrative process had begun by virtue of the request for the certificate of compliance; the Board should have been given the opportunity to apply its experience and expertise to the issue and to correct any errors it found in the administrator's decision; a hearing before the Board would have resulted in a record that the court could review under the common law writ of certiorari procedure; and parties should not be allowed to deprive local zoning officials of the opportunity to perform the responsibilities assigned them by law.

*Moore* at 580.

Based upon the compelling rationale expressed in *Moore*, we conclude that Ready Mix was required to exhaust the administrative remedies provided by statute and the ordinance by appealing the zoning official's stop work order to the Board of Zoning Appeals. Ready Mix's complaint is that the Zoning Office was in error when it issued a stop work order not that the County ordinance at issue is invalid or that the state statutes at issue are invalid. Nor are there any unusual facts or circumstances considered here that would create a basis for this Court to deviate from the rationale set forth in the cases examined by the Court it *Moore.*

Accordingly, we reverse the Judgment of the Trial Court and dismiss the action with the cost of the appeal assessed one-half to Ready Mix and one-half to Jefferson County, in our discretion.

_____
HERSCHEL PICKENS FRANKS, P.J.