# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 27, 2012  Session

## E. RON PICKARD and LINDA PICKARD, as TRUSTEES OF THE SHARON CHARITABLE TRUST and as INDIVIDUALS  v. TENNESSEE DEPARTMENT of ENVIRONMENT AND CONSERVATION, TENNESSEE WATER QUALITY CONTROL BOARD and TENNESSEE MATERIALS CORPORATION

**Direct Appeal from the Chancery Court for Davidson County**
**No. 09-2297-III     Ellen H. Lyle, Chancellor**

---

**No. M2011-01172-COA-R3-CV - Filed August 14, 2012**

---

The Tennessee Department of Environment and Conservation issued a permit allowing a proposed rock quarry to discharge storm water and wastewater into a nearby creek. Owners of property allegedly affected by the discharge filed an appeal challenging the issuance of the permit with the Water Quality Control Board, as well as a petition seeking a declaratory order construing the rules regarding the protection of existing uses of waters. The Water Quality Control Board refused to issue a declaratory order and the property owners appealed to the Davidson County Chancery Court. Because we conclude that the trial court lacked jurisdiction to grant the relief requested, we vacate the judgment of the trial court and remand for dismissal of this cause. Vacated and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and RICHARD H. DINKINS, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Bill Young, Solicitor General; Joseph F. Whalen, Associate Solicitor General; Elizabeth Parker McCarter, Senior Counsel; and R. Stephen Jobe, Senior Counsel, for appellants, Tennessee Department of Environment and Conservation and Tennessee Water Quality Control Board.

Elizabeth L. Murphy, W. David Bridgers, and Robert Anthony Peal, Nashville, Tennessee, for the appellees, E. Ron Pickard and Linda Pickard as Trustees for the Sharon Charitable Trust and as Individuals.

# OPINION

## I. Background

Plaintiffs/Appellees Ron and Linda Pickard are the Trustees of the Sharon Charitable Trust ("the Trust," and together with Mr. Pickard and Mrs. Pickard, "Appellees"). The Trust is a non-profit corporation managing the Horse Creek Wildlife Sanctuary and Animal Refuge ("the Sanctuary") in Hardin County, Tennessee. The Sanctuary is a recreation area open to the public for fishing, camping, and other outdoor activities. Horse Creek runs through the property.

This lawsuit involves the planned construction of a rock quarry in an undeveloped parcel adjacent to the Sanctuary ("the Quarry"). The Quarry will be owned and operated by Tennessee Materials Corporation. In order to begin construction, the Quarry applied for a Nationwide Pollution Discharge Elimination System discharge permit ("the permit") from the Tennessee Department of Environment and Conservation ("TDEC"). The Quarry applied for a permit in order to discharge wastewater and storm water from the Quarry into an unnamed tributary of Horse Creek, which runs onto the Sanctuary's property, near recreational areas.

Pursuant to the request for a permit, Amy Fritz, a biologist for TDEC's Jackson field office, conducted a standard stream health survey of a segment of Horse Creek in accordance with TDEC's Quality System Standard Operating Procedures for Macroinvertebrate Stream Surveys ("Standard Operating Procedures"). The purpose of the stream survey was to evaluate the "biological integrity" parameter of the water quality standards for waters classified for fish and aquatic life in accordance with the Standard Operating Procedures. Ms. Fritz's survey of the segment of Horse Creek that would be directly affected by discharge from the Quarry yielded a Biological Index Score of 30. According to the Standard Operating Procedures, this Biological Index Score meant that Horse Creek was slightly impaired, or not fully supporting its classified uses for aquatic life. The survey also revealed that the stream bed was suffering the effects of bank instability and that the bed scored below the habitat assessment guideline for maintaining habitat protective of aquatic life. The survey yielded a habitat score of 127, meaning that Horse Creek is moderately impaired with regard to habitat.

Notwithstanding Ms. Fritz's findings, TDEC issued a draft permit to the Quarry in August 2008. A draft permit is merely a tentative determination and serves to notify the public of a planned discharge. Only after the draft permit is made public and citizens are given the opportunity to comment on the draft, will a final permit be issued. The draft permit proposed to allow the Quarry to discharge wastewater and storm water into an unnamed

tributary of Horse Creek. The draft permit limited the frequency of discharges, however, and also placed limitations on the characteristics of the discharged wastewater. For example, Total Suspended Solids, or sediment, were limited to 40.0 milligrams per liter for any one day, and pH was similarly limited to 6.0 to 9.0 standard units. Other limitations regarding visible scum, oil, or other potentially hazardous discharges were further outlined. The draft permit, however, stated that Horse Creek did not qualify as "Exceptional Tennessee Waters"[1]

---

[1] Tennessee Compiled Rules and Regulations Rule 1200.04.03.06(4)(a) provides that waters will be classified as "Exceptional Tennessee Waters" if any of the following criteria are met:

> 1. Waters within state or national parks, wildlife refuges, forests, wilderness areas, or natural areas;
> 2. State Scenic Rivers or Federal Wild and Scenic Rivers;
> 3. Federally-designated critical habitat or other waters with documented nonexperimental populations of state or federally-listed threatened or endangered aquatic or semi-aquatic plants, or aquatic animals;
> 4. Waters within areas designated as Lands Unsuitable for Mining pursuant to the federal Surface Mining Control and Reclamation Act where such designation is based in whole or in part on impacts to water resource values;
> 5. Waters with naturally reproducing trout;
> 6. Waters with exceptional biological diversity as evidenced by a score of 40 or 42 on the Tennessee Macroinvertebrate Index (or a score of 28 or 30 in subecoregion 73a) using protocols found in TDEC's 2006 Quality System Standard Operating Procedure for Macroinvertebrate Stream Surveys, provided that the sample is considered representative of overall stream conditions; or
> 7. Other waters with outstanding ecological, or recreational value as determined by the department. When application of this provision is a result of a request for a permit, such preliminary determination is to be made within 30 days of receipt of a complete permit application.

If waters are classified as "Exceptional Tennessee Waters:"

> [N]o degradation will be allowed unless and until it is affirmatively demonstrated to the Department, after full satisfaction of the following intergovernmental and public participation provisions, that a change is justified as a result of necessary economic or social development and will not interfere with or become injurious to any classified uses existing in such waters.

Tenn. Comp. R. & Reg. 1200.04.03.06(4)(c).

under the state Antidegradation regulations[2] and concluded that "[t]herefore, the materials reviewed indicate that 'available conditions' exist in the receiving stream." The draft permit made no mention of the adverse results of the stream survey, including the findings regarding impaired aquatic life and habitat.

The draft permit was made public and concerned citizens were given the opportunity to comment either in writing or at public hearings. The Appellees participated in the commenting process. A summary of the comments issued by TDEC provides:

> Commenter said that Horse Creek has aquatic life . . . that was not properly evaluated or considered in this permit.
>
> Commenter said that the antidegradation regulations have not been followed or met with regard to this proposed permit or by the applicant in the application process. Horse Creek was improperly identified as not qualifying as "exceptional waters," as the biological and deliberative process were flawed and inadequate, failing to consider the actual conditions and uses.

On January 14, 2009, prior to the completion of the public comment period and issuance of a final permit, the Appellees filed a Petition for a Declaratory Order[3] with the Tennessee Department of Water Quality Control Board ("the Board," and together with TDEC, "Appellants"). The Appellees alleged that the permit application and draft permit contained inadequacies that prevented a proper application by TDEC. The Appellees further alleged that TDEC misapplied the Antidegradation rule and thereby mistakenly failed to conclude that the impairments revealed by the stream survey meant that there were unavailable conditions[4] in Horse Creek warranting greater protections. TDEC moved to

---

[2] According to TDEC, Antidegradation policy is to establish a greater level of protection for those waters that are identified to be of high quality.

[3] This case concerns the proper application of the Uniform Administrative Procedures Act to a petition for declaratory relief. As such the phrases "declaratory order" and declaratory relief" will be used throughout this decision. For clarity, we note that the phrase "declaratory order," as it is used throughout this opinion, refers to the type of declaratory relief that may be issued by the agency, here the Board. *See* Tenn. Code Ann. § 4-5-223. In contrast, the phrase "declaratory judgment" refers to the type of declaratory relief that may be rendered by the Chancery Court. *See* Tenn. Code Ann. § 4-5-225.

[4] Unavailable conditions exist where water quality is at, or fails to meet, the criterion for one or more parameters. In unavailable conditions, new or increased discharges of a substance that would cause or contribute to impairment will not be allowed. *See* Tenn. Comp. R. & Reg. 1200-4-3.06(2). In contrast,
(continued...)

dismiss the petition. The Board entered an order dismissing the case on February 18, 2009, wherein the Board stated:

> The Board declines to convene a contested case at this time based on the stipulated fact that the permit at issue has not been issued or denied therefore there is no final administrative action by the [TDEC].

\* \* \*

## REASONS FOR DECISION

> This ORDER of the Board is entered to maintain the delegated responsibilities of the Division and the Board; to prevent against the Board rendering impermissible advisory opinions based on hypothetical facts; and to protect the waters and the citizens of the state of Tennessee.

On March 13, 2009, TDEC issued a final permit to the Quarry. The final permit was substantially similar to the draft permit.[5] The permit referenced the Tennessee Antidegradation Policy, as well as the stream survey conducted prior to the issuance of the draft permit; however, the permit rationale, a document attached to the final permit concluded that:

> Based on the survey results and review of all the data, neither the unnamed tributary nor the reach of Horse Creek near the proposed discharge qualifies as Exceptional Tennessee Waters. The data do not indicate the presence of Federal and/or State listed threatened or endangered species of aquatic life as occurring within a two-mile radius of the proposed discharge monitoring point.

---

[4](...continued) available conditions occur where water quality is better than the applicable criterion for a specified parameter. In available conditions, new or additional degradation for that parameter will only be allowed if the applicant has demonstrated to the department that reasonable alternatives to degradation are not feasible. *See* Tenn. Comp. R. & Reg. 1200-4-3.06(3).

[5] Specifically, the final permit increased the limitation on Total Suspended Solids to 200 milligrams per liter and included, for the first time, a limitation on oil and grease of a maximum of 15 milligrams per liter. The draft permit limitation on pH remained unaltered.

In addition to the final permit and the rationale, TDEC issued a summary of the comments received during the public commenting period, including the comments set forth above regarding the Antidegradation rule. In response to those comments, TDEC stated:

> There was significant public interest in classifying Horse Creek as Exceptional Tennessee Waters. Many comments were received from the public that specifically requested that status due to the public's enjoyment of the facilities at the Horse Creek Wildlife Sanctuary. However, antidegradation rules and field sampling protocols were followed, and the receiving streams (Horse Creek and its unnamed tributary) were not found to be Exceptional Tennessee Waters, pursuant to the Rules of the Tennessee Department of Environment and Conservation, Chapter 1200-4-3-.06(4)(a). Biological sampling followed semi-quantitative protocols specified in the [Standard Operating Procedures]. The sample reach was at a location of sufficient watershed size and stream order for comparison to ecoregion biocriteria.

On April 6, 2009, the Appellees filed a "Permit Appeal and Declaratory Order Petition" with the Board, challenging the decision to issue the final permit and requesting a contested case. The April 6, 2009 appeal recited essentially the same grounds as the former declaratory judgment action previously dismissed by the Board. The petition specifically requested that the Board find that TDEC improperly concluded that Horse Creek had available conditions. According to the Appellees, a proper application of the Antidegradation rule required a finding of unavailable conditions due to the impaired ratings in aquatic life and habitat. With a finding of unavailable conditions, the Appellees argue that the existing uses of the creek should be given higher protections.

On May 14, 2009, the Quarry petitioned the Board to intervene as a defendant.[6] The Board granted the petition to intervene on June 11, 2009; however, there is no indication that

---

[6] On June 22, 2012, the Appellees filed notice to this Court that the Quarry had filed a Chapter 11 Petition for Reorganization in the United States Bankruptcy Court for the Western District of Tennessee on May 11, 2012. The Appellees noted that while the Quarry was present during some of the proceedings, it never formally intervened in this case. Nevertheless, the Appellees filed a motion in Bankruptcy Court to modify the automatic stay regarding litigation to allow this case to proceed. The Quarry did not oppose the motion. Consequently, the Bankruptcy Court entered an order on June 7, 2012 allowing this case to proceed.

the Quarry ever exercised its right to participate in this case.[7] On May 15, 2009, TDEC filed a motion to dismiss the declaratory judgment claim, arguing that the Appellees could seek review of the permit decision only through a permit appeal, and not through a declaratory order action. On May 29, 2009, the Appellees filed an amended Permit Appeal and Declaratory Order Petition, which specifically stated:

> 13. [Appellees] seek a declaratory order as to the validity and or applicability of the Water Board's Revised Anti-Degradation Rule, found at [Tennessee Compiled Rules and Regulations] 1200-4-3-.03, and the Water Quality Control Act, specifically [Tennessee Code Annotated] 69-3-108(e). [Appellees] contend[] that these rules and statutes require more than a mere guess or supposition in finding that the discharge will be "de minimis" and in concluding that degradation will not occur [Appellees] contend[] that the interpretation and application of the Anti-Degradation rules as to mining activities do not comply with [Tennessee Code Annotated] 69-3-108(e) when a receiving stream is determined to be impaired and will also receive industrial wastewater within the meaning of the Anti-Degradation [r]ules and the discharges to the stream have not been assessed.
>
> 12. [Appellees] seek a declaratory order regarding whether [t]he Anti-Degradation [r]ule requires TDEC to assess the applicable parameters of water quality, as set forth in [Tennessee Compiled Rules and Regulations] 1200-4-3-.03, to determine whether those parameters created "available conditions" or "unavailable conditions," such as those terms are clearly defined in the Anti-Degradation [r]ule. TDEC assessed "biological integrity" and "habitat" parameters for Horse Creek following protocols set forth in TDEC's [Standard Operating Procedures], as the water criteria rules require, and those assessments demonstrated that Horse Creek's biological condition was "slightly impaired" and its was "moderately impaired" with respect to habitat assessment guidelines. According to the Anti-Degradation [r]ule, "*unavailable conditions exist where water quality is at, or fails to meet, the criterion for one or more parameters.*" [Tennessee Compiled Rules and Regulations] 1200-4-3-.06(2) (emphasis supplied). [Appellees] contend[] that the rule is not valid

---

[7] The Quarry did not file a brief with this Court and is not a party to this appeal.

because it lacks specificity and cannot be properly applied without a scientific basis or analysis for determining the type of condition existing or whether additional discharges would be "de minimis." [Appellees] contend[] that pursuant to [Tennessee Code Annotated Section] 4-5-223, an aggrieved party with a recognized interest in the area of the discharges has the right, under the state Water Quality Control Act, to a scientific application of the Anti-Degradation rules to reasonably ensure compliance with [Tennessee Code Annotated Section] 69-3-108(e).

13. [Appellees] further contend as part of the Declaratory Order claim that TDEC's action in issuing the permit without application of a scientific analysis and a reasoned finding of impacts measured against the existing stream conditions violated the [Appellees'] rights and the State's obligations under the Water Quality Control Act and promulgated water quality rules.

14. [Appellees] seek[] review of the validity and application of the Anti-Degradation [r]ule and with [Tennessee Code Annotated Section] 69-3-108(e) as it related to allowing discharges that have not been assessed.

15. [Appellees] also request a review of the commissioner's action in issuing the March 13, 2009 NPDES permit to [the Quarry]. [Appellees] allege that the issuance of the permit violates [Tennessee Code Annotated Section] 69-3-108 including subsection (e) in that restriction of the permit are not consistent with the Anti-Degradation [r]ules, the Anti-Degradation [r]ules were not followed in issuing the permit, and the permit would cause a condition of pollution either by itself of in combination with other conditions and the parameters in the permit are not in compliance with the most restrictive state federal water quality limits.

The Administrative Law Judge ("ALJ") heard oral arguments on TDEC's motion to dismiss on July 9, 2009. Finding that the applicable law clearly and unambiguously provides that permit appeal is the exclusive means of review of the issuance of a permit, the ALJ dismissed the Appellees' claim for declaratory relief on October 6, 2009. Nothing in the record suggests that a contested case was ever convened on the issue of the declaratory order.

-8-

The permit appeal remained a viable cause of action.[8]

## II. Procedural History

On December 4, 2009, Appellees filed a petition in the Davidson County Chancery Court for judicial review of the Board's refusal to consider the declaratory order petition filed concurrently with Appellees' permit appeal. The petition for judicial review specifically stated:

> [T]he decision of the Board is in violation of [Tennessee Code Annotated Section] 4-5-223 and should be reversed pursuant to [Tennessee Code Annotated Section] 4-5-322(h)(1).
>
> WHEREFORE. [Appellees] seek judicial review of the ruling to dismiss the "Petition for Declaratory Order" pursuant to Tennessee Code Annotated Section] 4-5-322(a) as a matter of law . . . .

Accordingly, the judicial review petition did not request that the Chancery Court issue a declaratory judgment, only that it reverse the Board's refusal to do so. On December 4, 2009, Appellees also filed a separate petition for Declaratory Judgment in the Chancery Court of Davidson County, pursuant to Tennessee Code Annotated Section 4-5-225. This petition requested that the trial court issue a declaratory judgment regarding the application of the Antidegradation rule. Both cases were assigned to Chancellor Ellen Hobbs Lyle. The December 2009 petition for a declaratory judgment is the subject of a separate appeal to this Court, *Pickard v. Tennessee Water Quality Control Board*, M2011-2600-COA-R3-CV; we refer to the proceedings in the companion case only for the sake of clarity.

The parties subsequently filed trial briefs regarding the jurisdiction of the Board to consider the declaratory order petition filed in conjunction with the permit appeal. By order of April 11, 2011, the trial court ruled that:

> In sum, then the Court's construction of the interplay between [Tennessee Code Annotated Section] 69-3-105(i) [regarding a permit appeal] and [Tennessee Code Annotated Sections] 4-5-223 through 225 is that a petition for declaratory relief pursuant to section 4-5-223 related to the issuance of a permit may be requested by an aggrieved party in a permit appeal under section

---

[8] From our review of the record, the permit appeal has not yet been heard by the Board.

69-3-105(i). This construction is based on: (1) the flexible and expansive text of section 69-3-105(i) that "any of the issues" raised during the permitting process "may" be presented in the appeal; (2) the need to assure that the right of an aggrieved party to obtain a ruling as a matter of law regarding the validity or application of a water quality statute or regulation is maintained for these reasons . . . , that declaratory relief has become such a hallmark in the law; and [(3)] the same standard of review and contested case procedure are used in the permit appeal and petition for declaratory order.

Accordingly, the trial court ruled that the Board erred in refusing to issue the requested declaratory order.

The trial court went on to note the "unusual procedural posture" in the case regarding the simultaneous filing of a petition for judicial review of the Board's refusal to issue a declaratory order and the separate petition for a declaratory judgment from the Chancery Court. Because the trial court perceived the issues to be identical in both the petition for judicial review and the petition for a declaratory judgment, the trial court ruled that its decision reversing the Board's refusal to issue a declaratory order in conjunction with the permit appeal rendered the separate petition for a declaratory judgment from the Chancery Court moot. Accordingly, the trial court dismissed the separate petition for declaratory judgment and ordered that the parties return to court for a hearing on whether the petition for a declaratory order filed in conjunction with the permit appeal would be remanded back to the Board for consideration.

The Appellees filed a timely motion to alter or amend the trial court's ruling that the separate petition for a declaratory judgment was rendered moot by the trial court's decision in the judicial review case. The Appellees argued that the two petitions sought different relief and, therefore, the petition for a declaratory judgment was not rendered moot by the decision reversing the Board's refusal to issue a declaratory order. On May 10, 2011, the trial court entered an order modifying its previous order rendering the separate petition for declaratory judgment moot, and ruled that the separate petition could proceed. In addition, the trial court ordered that, based on the Board's refusal in the separate petition for declaratory judgment to consider the Appellees' request for declaratory relief, the matter would not be remanded back to the Board for consideration. The trial court further stated that its order was final and the Appellants timely appealed.

## III. Analysis

-10-

The Appellants raise one issue, which we restate:

> Except as expressly provided therein, does Tennessee Code Annotated Section 69-3-105(i) preclude filing for a declaratory order under Tennessee Code Annotated Section 4-5-223 once a water quality permit application has been submitted to the Tennessee Department of Environment and Conservation.

We do not reach this issue, however, based upon our conclusion that this Court lacks subject matter jurisdiction in this case. Subject matter jurisdiction concerns the authority of the court to hear a matter and cannot be waived. *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996). The court may consider subject matter jurisdiction *sua sponte*. Tenn. R. App. P. 13(b); *Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998). Judgments or orders entered by courts without subject matter jurisdiction are void. *See Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955); *Riden v. Snider*, 832 S.W.2d 341, 343 (Tenn. Ct. App. 1991); *Scales v. Winston*, 760 S.W.2d 952, 953 (Tenn. Ct. App. 1988). The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is demonstrated. *See* Tenn. R. Civ. P. 12.08. Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal. *See J.W. Kelly & Co. v. Conner*, 122 Tenn. 339, 397, 123 S.W. 622, 637 (1909); *see also First Am. Trust Co. v. Franklin–Murray Dev. Co.*, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001).

In this case, our review of the record leads us to conclude that the trial court lacked jurisdiction to consider Appellees' petition for judicial review of the Board's refusal to issue a declaratory order in this case. This determination is based on the framework contained in the Uniform Administrative Procedures Act ("UAPA") regarding declaratory orders and judicial review of agency decisions.

Petitions for declaratory orders before administrative agencies such as the Board in this case are governed by Tennessee Code Annotated Section 4-5-223:

> (a) Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency. The agency shall: (1) Convene a contested case hearing pursuant to this chapter and issue a declaratory order, which shall be subject to review in the chancery court of Davidson County, unless otherwise specifically provided by statute, in the manner provided for the review of decisions in contested cases; or

-11-

(2) Refuse to issue a declaratory order, in which event the person petitioning the agency for a declaratory order may apply for a declaratory judgment as provided in § 4-5-225.

\* \* \*

(c) If an agency has not set a petition for a declaratory order for a contested case hearing within sixty (60) days after receipt of the petition, the agency shall be deemed to have denied the petition and to have refused to issue a declaratory order.

Accordingly, "the decision of whether to issue a declaratory order is within an agency's discretion." *Consumer Advocate Div. ex rel. Tennessee Consumers v. Tennessee*, No. M1999-01170-COA-R12-CV, 2001 WL 575570, *5 (Tenn. Ct. App. May 30, 2001). The term "discretion," as it is used in administrative proceedings, is discussed in *Administrative Law and Practice*:

The term discretion pervades administrative law even more than other legal disciplines. Yet it is one of the most unsatisfactory phrases in law. Discretion has many meanings, especially in application. In judicial review, for example, the existence of "discretion" may mean that the decision is unreviewable, § 12:12, or reviewable only for abuse, § 9:27. An official may be said to have discretion to make adjustments at the margin, to individualize the application of general rules, or to set generally applicable policy. In short, discretion has many meanings and each conveys a different type of decisionmaking.

The core meaning of the term discretion is some degree of decisionmaking freedom and independence. The degree of such decisionmaking freedom and independence in the particular context emerges as a crucial question. Courts have held that "discretion" means that an official exercises their authority according to their understanding and conscience. In short, it is impossible to talk about a specific use of the term without first looking behind that use for the intended meaning of the term in that context.

1 Admin. L. & Prac. § 1:20 (3d ed.) (footnotes omitted). In the context of the Appellees' petition for a declaratory order, Tennessee Code Annotated Section 4-5-223 specifies what action the Board, in its discretion, may take. Here, the Board had three options: 1) convene

-12-

a contested case in order to decide the merits of the petition for declaratory order; 2) refuse to issue a declaratory order, in which case the complaining party may file a petition for a declaratory judgment pursuant to Tennessee Code Annotated Section 4-5-225; or 3) take no action, in which case, the petition for declaratory judgment is deemed denied and the complainant may file a petition for a declaratory judgment pursuant to Tennessee Code Annotated Section 4-5-225. *See* Tenn. Code Ann. §4-5-223; *see also* **Hughley v. State**, 208 S.W.3d 388 (Tenn. 2006) (holding that when petitioned for a declaratory order, the agency "may respond in one of two ways: (1) convene a contested case hearing and issue a declaratory order or (2) refuse to issue a declaratory order" either by a formal denial or by taking no action). Although the order denying the Appellees' petition for a declaratory order is styled as an order granting a motion to dismiss, of the only three options available to the Board pursuant to Tennessee Code Annotated Section 4-5-223, the Board clearly refused to issue the requested declaratory order. *See* **Gordon v. Greenview Hosp. Inc.**, 300 S.W.3d 635, 643 (Tenn. 2009) (citing **Tenn. Farmers Mut. Ins. Co., v. Farmer**, 970 S.W.2d 453, 455 (Tenn. 1998) (noting that with regard to legal filings, the law favors substance over style)).

In response to the Board's refusal to issue the declaratory order, the Appellees filed a petition for judicial review of the Board's decision pursuant to Tennessee Code Annotated Section 4-5-322, seeking to have the Board's decision to refuse the declaratory order reversed. Tennessee Code Annotated Section 4-5-322 provides, in pertinent part:

> (a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.[9]
>
> * * *
>
> (b)(1)(A) Proceedings for review are instituted by filing a

---

[9] Although not specifically briefed, we note that the decision of the Board to dismiss the Appellees' petition for a declaratory order is not a final decision in this case as the Appellees' permit appeal remains pending before the Board. *See* **In re Estate of Schorn**, 359 S.W.3d 192, 195 (Tenn. Ct. App. 2011) (noting that an "order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final"). We presume that the Appellees filed their appeal to the Chancery Court pursuant to Tennessee Code Annotated Section 4-5-322's provision that any "preliminary, procedural or intermediate agency action or ruling" may be immediately appealed when "review of the final agency decision would not provide an adequate remedy." Because we hold that the trial court lacked jurisdiction to consider this case on other grounds, we will not consider this issue.

petition for review in the chancery court of Davidson County, unless another court is specified by statute. Such petition shall be filed within sixty (60) days after the entry of the agency's final order thereon.

Nothing in the petition at issue in this case asks that the Chancery Court consider the merits of this issue or issue a declaratory judgment in favor of the Appellees.[10] However, Tennessee Code Annotated Section 4-5-223 clearly provides that the appropriate procedure to follow when the Board refuses to issue a declaratory order is to seek a declaratory judgment pursuant to Tennessee Code Annotated Section 4-5-225. This statute provides:

> (a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.
> (b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.

Tenn. Code Ann. § 4-5-225. It is well settled that, "where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the more particular provision." *Arnwine v. Union County Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003) (quoting *Woodroof v. City of Nashville*, 192 S.W.2d 1013, 1015 (Tenn. 1946)). Thus, the provisions of a specific statute will control over conflicting provisions in a general statute. *Id*. Consequently, when an agency refuses to issue a declaratory order, proper procedure dictates that the complaining party follow the specific procedures of Tennessee Code Annotated Sections 4-5-223 and -225 and file a petition for a declaratory judgment in Chancery Court rather than the more general Tennessee Code Annotated Section 4-5-322 procedures regarding a petition for judicial review.

This Court has stated that one of the chief purposes of the Uniform Administrative

---

[10] The Appellees do seek this relief in the companion case, *Pickard v. Tenn. Water Quality Control Board*, M2011-2600-COA-R3-CV.

-14-

Procedures Act ("UAPA") is "to provide a single method for obtaining judicial review of the decisions of state agencies." **McEwen v. Tennessee Dept. of Safety**, 173 S.W.3d 815 (Tenn. Ct. App. 2005). This Court further explained:

> The General Assembly enacted the UAPA in 1974 in response to the proliferation of state boards and agencies. Blank, *Scope of the Tennessee Uniform Administrative Procedures Act*, 6 Mem.St.U.L.Rev. 159, 159 (1976). The growth in the number of agencies had created an "incoherent, and indeed incomprehensible hodgepodge" of procedures and a "very fragmented" judicial review process. *See* Sanford, *The Development of the Tennessee Uniform Administrative Procedures Act*, 6 Mem.St.U.L.Rev. 151, 157 (1976); Sewell, *Judicial Review and the Uniform Administrative Procedures Act*, 6 Mem.St.U.L.Rev. 253, 253 (1976). As reflected in Tenn. Code Ann. § 4-5-103(a), the General Assembly believed that the UAPA would "clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination[s]." [Act of Mar. 9, 1974, ch. 725, 1974 Tenn. Pub. Acts 945. The original act, as amended is codified at Tennessee Code Annotated Sections 4-5-101 through -324.]
>
> *    *    *
>
> Similarly, the caption of the 1974 Act states that its purpose was "to provide a system of uniform administrative procedures for the various agencies of the [S]tate of Tennessee; [and] to prescribe the limits and procedures for judicial review of agency decisions."

**Mid-South Indoor Horse Racing, Inc. v. Tennessee State Racing Com'n**, 798 S.W.2d 531, 536 & n.7 (Tenn. Ct. App. 1990) (footnote omitted). Thus, the General Assembly adopted the procedures in the UAPA as a way to outline specific procedures for review of agency decisions by the judiciary. However, judicial review of administrative decisions is limited by statute. "It is a settled rule in this State and is the general rule in other jurisdictions that 'where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act.'" **Tennessee Enamel Mfg. Co. v. Hake**, 183 Tenn. 615, 194 S.W.2d 468 (Tenn. 1946). Accordingly, an individual must comply with the procedures as set forth in the UAPA to obtain relief in the courts.

Nothing in Tennessee Code Annotated Section 4-5-225 gives the Chancery Court the authority to reverse the Board's decision not to issue a declaratory order. Indeed, the decision to refuse to issue a declaratory order is completely within the Board's discretion. *See* Tenn. Code Ann. § 4-5-223 (providing that not only may an agency refuse to issue an order, but the agency may refuse to take any action whatsoever). The UAPA does not foreclose relief to a complaining party, however. The complaining party is still entitled to seek a declaratory judgment in the Davidson County Chancery Court pursuant to Tennessee Code Annotated Section 4-5-225. In this case, the Appellees instead filed a petition for judicial review pursuant to Tennessee Code Annotated Section 4-5-322. We recognize that legal pleadings should be construed based on their substance rather than their caption. *Gordon v. Greenview Hosp. Inc.*, 300 S.W.3d 635, 643 (Tenn. 2009). However, the failure to follow the proper procedure was not a mere technicality in this case. Indeed, the petition for judicial review filed by the Appellees in the trial court seeks only reversal of the Board's decision in refusing to issue the declaratory order. However, nothing in Tennessee Code Annotated Section 4-5-225 provides that the Chancery Court may grant this relief. Instead, Tennessee Code Annotated Section 4-5-225 grants the Chancery Court authority only to render a declaratory judgment on the validity or applicability of a statute, ordinance, or rule. Thus, the Chancery Court in this case did not have jurisdiction to grant the requested relief. The proper procedure, and indeed the procedure taken by the Appellees in the companion case, was to file an original action for a declaratory judgment in the Davidson County Chancery Court, stating that the Board had previously refused to issue a declaratory order.

Our determination that the Chancery Court lacked subject matter jurisdiction to entertain the Appellees' request is supported by *Dishmon v. Shelby State Community College*, 15 S.W.3d 477 (Tenn. Ct. App. 1999). In *Dishmon*, this Court held that the procedures outlined in Tennessee Code Annotated Section 4-5-322 regarding judicial review are only applicable to decisions rendered in contested cases. *Id.* at 481 (holding that "judicial review under Tenn. Code Ann. § 4-5-322 is not available if the proceeding to be reviewed is not a contested case") (citing *Mid–South Indoor Horse Racing, Inc. v. Tennessee State Racing Comm'n*, 798 S.W.2d 531, 536 (Tenn. Ct. App. 1990)). This interpretation of Tennessee Code Annotated Section 4-5-322(a) is further supported by the plain language of the statute, which provides that only "[a] person who is aggrieved by a . . . decision *in a contested case* is entitled to judicial review." Tenn. Code Ann. § 4-5-322 (emphasis added). When statutory language is clear and unambiguous, we simply apply its plain meaning. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). The *Dishmon* Court concluded that, because the appeal was not taken from a contested case, the trial court lacked jurisdiction to consider the petition for judicial review and dismissed the case. *Id.* at 482.

In our research, we have found no cases which hold that an agency's action in refusing to convene a contested case with regard to a petition for declaratory order, resulting in denial

of the petition, is subject to judicial review pursuant to Tennessee Code Annotated Section 4-5-322. In fact, the Tennessee Supreme Court in **Hughley v. State**, 208 S.W.3d 388 (Tenn. 2006), recently held that a petition for declaratory judgment pursuant to Tennessee Code Annotated Section 4-5-225 is not "the equivalent of" a petition for judicial review for purposes of the statute of limitations. **Id.** at 388. In **Hughley**, an inmate petitioned the Department of Correction for a declaratory order regarding the calculation of his sentence. **Id.** at 390. The Department of Correction exercised its discretion pursuant to Tennessee Code Annotated Section 4-5-223(a)(2) to deny the petition by letter, without convening a contested case. **Id.** More than sixty days after receiving the denial letter, the inmate filed a petition for declaratory judgment with the Chancery Court of Davidson County. **Id.** Concluding that the applicable statute of limitations was the sixty (60) day time period for judicial review of agency decisions, the trial court dismissed the complaint as untimely. **Id.** The Court of Appeals affirmed. **Id.** The Supreme Court granted certiorari and reversed, stating:

> Section 4-5-223 of the [UAPA] provides that an "affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Tenn. Code Ann. § 4-5-223(a) (1998). The petitioned agency may then respond in one of two ways: (1) convene a contested case hearing and issue a declaratory order, or (2) refuse to issue a declaratory order. **Id.** at (a)(1), (a)(2). If the agency elects to convene a contested case hearing, the resulting declaratory order is "subject to review in the chancery court of Davidson County, unless otherwise specifically provided by statute, in the manner provided for the review of decisions in contested cases." **Id.** at (a)(1). Judicial review of decisions in contested cases is governed by section 4-5-322, see id. § 4-5-322(a)(1) (Supp. 2003), and petitions for review must be filed within sixty days after entry of the agency's final order, *id.* at (b)(1).
>     ***If, however, the agency declines to issue a declaratory order, the aggrieved petitioner may seek a judicial determination of his concerns by filing a suit for declaratory judgment in the chancery court of Davidson County. Id.*** [at] § 4-5-225(a) (1998). Section 4-5-225 does not set forth a time period within which the complainant must file his suit for declaratory judgment.

**Hughley**, 208 S.W.3d at 391 (emphasis added). The Supreme Court further opined:

[S]ection 4-5-223(a)(1) of the [UAPA] affords judicial review under section 4-5-322 ***only after*** a contested case hearing has been convened and a declaratory order has been issued. That did not happen in this case.

\*     \*     \*

In short, the provisions of the statute for judicial review of contested cases, set forth at Tennessee Code Annotated section 4-5-322, simply do not apply to the proceeding before us. Rather, the provisions of section 4-5-225, setting forth the procedure for seeking a judicial determination of the claims made in a petition for declaratory order after the agency refuses under section 4-5-223(a)(2) to issue the requested order, apply. ***The provisions of each statute are not interchangeable.***

*Id.* at 393–94 (emphasis added). Thus the Supreme Court concluded that the statute allowing a complainant to file a petition for a declaratory judgment in Chancery Court was "wholly distinct" from the judicial review statute. *Id.* at 394. Consequently, the Court held that the sixty (60) day statute of limitations applicable to petitions for judicial review was inapplicable to petitions for declaratory judgment. *Id.* at 395. Instead, the Supreme Court held that the general ten (10) year statute of limitations, Tennessee Code Annotated Section 28-3-110, applied to petitions for declaratory judgment in Chancery Court pursuant to the UAPA. *Id.*; *cf.* ***Richardson v. Tenn. Bd. of Dentistry***, 913 S.W.2d 446, 456–57 (Tenn. 1995) (holding that "a party ***in a contested case*** . . . may seek judicial review of the resolved issues and of those issues that the agency refused or was without authority to consider," in a case where the agency convened a contested case and issued a declaratory order stating that it was without authority to consider constitutional challenges to statute) (emphasis added).

In this case, the Board likewise declined to convene a contested case and issue a declaratory order. Thus, based on the reasoning in ***Dishmon*** and ***Hughley***, the judicial review statute was not available to seek review of that decision. Instead, the distinct procedures of the petition for declaratory judgment statute applied.

Based on the foregoing, we conclude that the Chancery Court lacked jurisdiction to consider Appellees' petition for judicial review of the Board's refusal to issue a declaratory order. The Board was fully within its power, under Tennessee Code Annotated Section 4-5-223, to refuse to issue the declaratory order. The UAPA provides a specific method of recourse: filing a petition for declaratory judgment in Chancery Court pursuant to Tennessee

Code Annotated Section 4-5-225. The Appellees failed to follow that procedure in this case. Consequently, we must vacate the judgment of the trial court in this case and remand for dismissal of this cause.

### IV. Conclusion

The judgment of the Chancery Court of Davidson County is vacated and this cause is remanded to the trial court for dismissal. Costs of this appeal are taxed to Appellees, Ron and Linda Pickard, as the Trustees of the Sharon Charitable Trust, and as individuals, from all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE